PETER J. CRESCI, et al.,

    Plaintiffs,

    v.

JOARRIE AQUINO, Individually,
MICHAEL A. SIGNORILE, JR.,
Individually, COUNTY OF HUDSON;
and John Does 1-4,

    Defendants.

Civ. No. 13-4695 (KM) (JBC)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    Under the New Jersey Rules of Court, a "complaint-warrant" may be issued if there is probable cause to believe a person has committed or is committing a serious offense. For other, relatively less serious offenses, a "summons-complaint" is issued. A complaint-warrant may furnish the basis for an arrest; a summons-complaint is a notice to appear. In June 2013, a New Jersey municipal court judge found probable cause to believe that the plaintiff here, Peter Cresci, committed two third degree offenses—crimes that would ordinarily call for a summons-complaint. But the judge issued a warrant-complaint instead, so he was arrested. That procedural irregularity, Cresci claims, violated his constitutional rights.

    Cresci brings this action against the arresting officers, Detectives Joarrie Aquino and Michael Signorile, Jr., as well as the County of Hudson (the "County"), alleging violations of his First, Fourth, Fifth, and Fourteenth Amendment rights. He also asserts a potpourri of state law torts, including battery, assault, intentional and negligent infliction of emotional distress, and unlawful interference with prospective economic advantage. Defendants move

to dismiss the complaint on grounds of sovereign and qualified immunity. In the alternative, they move to dismiss the complaint for failure to state a claim. For the reasons stated herein, the motions will be GRANTED.

## I.  BACKGROUND

Cresci is an attorney.[1] He suggests that the County is hostile to him, because he has sued the County on several occasions. He also represented County employees during a successful unionization drive, and has "cooperated in several investigations regarding County of Hudson administrators, including the Hudson County Sheriff's Hatch Act violations." (Compl. ¶ 43).

"[B]ased on the review of financial records & court documents, and a sworn statement of the victim," on June 10, 2013, Signorile swore under oath that there was probable cause to believe Cresci had committed third degree theft and forgery.[2] A municipal judge agreed, and issued a warrant-complaint. Cresci was arrested later that day. At the time, Cresci was conducting a medical malpractice trial in New Jersey state court. Signorile handcuffed Cresci from behind, allegedly injuring him in some manner. Signorile and Aquino then "Perp Walked" Cresci though the courthouse and outside. (ECF No. 41-6; Compl. ¶¶ 8-9, 25-26)

---

[1]    The Court ordinarily affords *pro se* filings considerable leeway. *Niblack v. Murray*, No. CV126910MASTJB, 2016 WL 4086775, at *1 n.1 (D.N.J. July 29, 2016) (citing *Pratt v. Port Auth. of N. Y. & N.J.*, 563 F. App'x 132, 134 (3d Cir. 2014) ("[B]ecause [the plaintiff] is proceeding pro se, we will construe his brief liberally."). Not so here. Cresci is an attorney. *See Kenny v. United States*, No. CIV 08–3921 GEB, 2009 WL 276511, at *8 (D.N.J. Feb. 5, 2009) (Brown, C.J.) ("[T]his pro se Plaintiff is an attorney, and therefore, has substantial legal training and professional experience, undermining the rationale set forth by the Supreme Court in *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).") (citing *Allen v. Aytch*, 535 F.2d 817, 821 n. 21 (3d Cir. 1976) (stating that a third year law student who drafted a complaint had "substantial legal training" and therefore declining to construe the complaint liberally)). Cresci has not asked for—nor would he be entitled to—such leeway, so I construe the papers under the usual standards.

[2]    Defendants have submitted the complaint-warrant in connection with their papers. I consider it because it is "integral to" and "explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Cresci was taken by Signorile and Aquino to the Hudson County Prosecutor's Office ("HCPO"). There, Aquino inventoried Cresci's personal effects. At his initial appearance, the municipal judge declined to release him on his own recognizance, and set bail. Cresci was remanded to custody. Although he invoked his right to counsel, he was not allowed to meet with a lawyer. He was not provided with food or drink for the first 10 hours of imprisonment. He did not receive medical attention for the unspecified injury he suffered incident to arrest. Before posting bail and being released, he spent about 25 hours in jail. (Compl. ¶¶ 9-12, 16)

On July 25, 2013, a New Jersey grand jury returned a true bill against Cresci for the crimes of third degree theft and forgery. (ECF No. 41-7)[3]

On August 5, 2013, Cresci filed this complaint. It primarily asserts five lettered causes of action:

  A. False arrest: violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983;

  B. Excessive force: violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983;

  C. False imprisonment: violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983;

  D. Abuse of process; and

  E. First Amendment Retaliation under 42 U.S.C. § 1983.

District Judge Faith S. Hochberg administratively terminated the case on April 7, 2014, pending resolution of the underlying criminal proceedings.

---

[3]   Defendants have submitted a copy of the indictment with their papers. I consider it because it is "integral to" Cresci's false arrest and imprisonment claims, which depend on the existence (or not) of probable cause. *Schmidt*, 770 F.3d 241 at 249. It is also an undisputedly authentic, publicly-available document originating within this court's territorial jurisdiction. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999); *see generally* Fed. R. Evid. 201.

Two years later, on June 2, 2016, Cresci represented that the "underlying [criminal] action has been resolved."[4] Judge Hochberg having retired in the interim, this civil case was reassigned to me, and I reopened it. (ECF Nos. 1, 30, 34, 35, 37)

On August 31, 2016, Aquino and Signorile filed a renewed motion to dismiss. On October 4, 2016, Hudson County filed a "cross-motion" to dismiss, essentially adopting the arguments and reasoning of Aquino and Signorile's motion. (ECF Nos. 41, 47)

## II.    STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007). The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

---

[4]     Apparently Cresci pled guilty to falsifying records in exchange for dismissal of the theft and forgery charges. (ECF No. 41-8; Def. Br. 3) In support, defendants have submitted a plea form, which defendants have certified is Cresci's. The document, however, is largely illegible. Cresci rather unclearly claims that it has never been "provided" to him, without actually denying that he filled it out. (Pl. Br. 7) So while the plea form is probably integral to the complaint, there seems to be some question as to its contents or authenticity. For the reasons stated in Part III.C., *infra*, this document is not necessary to resolve these motions to dismiss, so I will not consider it.

Defendants have also submitted a second document, a pretrial intervention order, which has been filed under seal. This one appears to be an authentic court document, and Cresci does not argue otherwise. Thus I may consider it, but for the reasons stated in Part III.C., *infra* it, too, is not necessary to resolve these motions to dismiss.

In addition, and in the alternative, the motions seek dismissal of the complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

### A.   The County's "Cross-Motion"

First, some brush-clearing. Cresci takes issue with the County's "cross-motion" to dismiss, and asks me to "bar" it. The argument seems to be that the County has waived its right to assert defenses under Federal Rules of

Civil Procedure 12(b)(1) or 12(b)(6) because it has filed an answer. But lack of subject matter jurisdiction may be raised at any time. Fed. R. Civ. P. 12(h)(3). And a motion to dismiss for failure to state a claim upon which relief can be granted may be made as motion for judgment on the pleadings at any time, so long as trial is not delayed. Fed. R. Civ. P. 12(c), 12(h)(2). The County's motion was made well in advance of trial. There is no risk of delay.

Nor is there any procedural disadvantage to Cresci. The County's motion is not really a "cross-motion" at all, but merely a joining-in and adoption of the arguments presented in the individual defendants' motion to dismiss. Cresci has been afforded, and has taken, the opportunity to respond to both motions.[5] (ECF Nos. 44, 50). I therefore deny Cresci's request to strike or bar the County's motion.

## B. Sovereign Immunity/Section 1983 "Persons"

### 1. Eleventh Amendment

Defendants move to dismiss the complaint on jurisdictional grounds, claiming that they partake of the State's Eleventh Amendment sovereign immunity. The Eleventh Amendment to the Constitution guarantees the states immunity from certain claims: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Despite the limited scope of its wording, the Eleventh Amendment has long been held to incorporate a more general principle of sovereign immunity that bars citizens

---

[5]     Cresci alternatively argues that the County's motion to dismiss is barred because it has already filed a motion to dismiss. But this is the County's first motion to dismiss; it was the individual defendants who moved to dismiss or stay the case in 2013, before it was administratively terminated. (ECF No. 16) Again, however, subject matter jurisdiction cannot be waived, and a 12(b)(6) motion may be brought as a motion for judgment as pleadings under Rule 12(c) provided it doesn't delay trial. Indeed, motions asserting grounds under Rule 12(b)(1) or 12(b)(6) are specifically excepted from the Rule's ban on successive motions. Fed. R. Civ. P. Rule 12(g), 12 (h)(2) & (3).

from bringing suit against any state in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). The Eleventh Amendment, as a bar to suit, is of jurisdictional stature. *Id.* at 98 (citing *Hans v. Louisiana*, 134 U.S. 1 (1980)).

Cresci's federal-law claims are brought under 42 U.S.C. § 1983. Although Congress may in some circumstances override a state's sovereign immunity, it did not do so when it enacted section 1983. *Quern v. Jordan*, 440 U.S. 332, 342 (1979). Monetary claims for deprivations of civil rights under section 1983 are therefore subject to the Eleventh Amendment sovereign immunity bar. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 58 (1989). That bar applies to state common law causes of action as well. *See College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 355 n.1 (3d Cir. 1997), *aff'd*, 527 U.S. 666 (noting that a claim of common law unfair competition "obviously could not be asserted successfully [against instrumentality of the state] in light of the Eleventh Amendment"); *Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462, 492 (D.N.J. 2001) (claim of common law negligence was barred by the Eleventh Amendment).

Aquino and Signorile, however, are not themselves the State. They are not sued in their official capacities as County (let alone State) employees, but rather in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("[O]fficers sued in their personal capacity come to court as individuals."); *Scheuer v. Rhodes*, 416 U.S. 232, 238 (1977) ("[D]amages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office.").

Nor is the County identical to the State. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979) ("[T]he Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities even though such entities exercise a 'slice of state power.'"); *accord Mt. Healthy City School Dist.*

*Bd. Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Kovats v. Rutgers, The State Univ.*, 822 F.2d 1303, 1307 (3d Cir. 1987).

If defendants are to enjoy the State's sovereign immunity, then, it must be because the State is the "real party in interest" here. *Haybarger v. Lawrence Cty. Adult Probation and Parole*, 551 F.3d 193, 198 (3d Cir. 2008); *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239 (3d Cir. 2005) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). In determining whether the State is the real party in interest, the courts are to consider three factors: (1) whether the source of the money to pay a judgment would be the State treasury, (2) the status of the defendant entity under State law, and (3) the defendant entity's degree of autonomy. *Fitchik v. N.J. Transit Rail Ops., Inc.*, 873 F.2d 655, 659 (3d Cir. 1989). The burden of establishing immunity rests on the party asserting it. *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001).

Aquino and Signorile say that they meet the *Fitchik* test because the State is required by law to indemnify HPCO, their employer.[6] It is true that County prosecutors have been held to act as agents of the state when performing core law enforcement and prosecutorial functions. *See Wright v. State*, 169 N.J. 422, 453, 778 A.2d 443 (2001); *Coleman v. Caye*, 87 F.3d 1491, 1499 (3d Cir. 1996). HCPO is not a named defendant, however, and Cresci seeks to recover damages from Aquino and Signorile in their personal, not official, capacities. The State's voluntary decision to indemnify Aquino and Signorile does not transform them into agents of the State. As noted above, even as to an actual State employee, who surely would have a stronger claim for indemnification, the Eleventh Amendment would not bar a personal-capacity suit. *Hafer*, 502 U.S. at 27; *Scheuer*, 416 U.S. at 238. Indemnification would not "transform a personal-capacity action against a state official into an

---

[6]     Presumably, they mean to imply that HCPO would indemnify them in turn. The State Attorney General is representing Aquino and Signorile in these proceedings. Aquino and Signorile have not addressed the other two *Fitchik* factors.

official-capacity action against the state." *Farid v. Smith*, 850 F.2d 917, 923 (2d Cir. 1988); *see also, e.g., Sales v. Grant*, 224 F.3d 293, 297-98 (4th Cir. 2000); *Blaylock v. Schwinden*, 862 F.2d 1352, 1354 (9th Cir. 1988); *Wilson v. Beebe*, 770 F.2d 578, 588 (6th Cir. 1985); *Duckworth v. Franzen*, 780 F.2d 645, 650-51 (7th Cir. 1985). The State cannot throw its cloak of immunity over County employees by indemnifying them. If that principle were accepted, the State would have the power to choke off all federal remedies against state officers. *See Wilson*, 770 F.2d at 588 (citing *Demery v. Kupperman*, 735 F.2d 1139, 1146-47 (9th Cir. 1984)). As to Aquino and Signorile, who are sued in their individual capacities, the motion to dismiss on Eleventh Amendment grounds is therefore denied.

The County, which relies on the arguments advanced in the individual defendants' papers, doesn't have much to add to support its claim to sovereign immunity. Counties, as noted above, are presumptively not state entities. The County does not argue, let alone demonstrate, that any judgment against it will be paid by the State, that it is legally a surrogate for the State, that it lacks autonomy, or, more generally, that the State is the real party in interest here. The County's motion to dismiss on Eleventh Amendment grounds is denied.

### 2. "Persons" under section 1983

As to section 1983, there is another issue that is customarily analyzed together with Eleventh Amendment immunity, but is distinct. I refer to the issue of who or what is a suable "person" under section 1983.

Counts A, B, C, and E of the complaint (false arrest, excessive force, false imprisonment, and First Amendment retaliation) seek damages under 42 U.S.C. § 1983. Section 1983 provides:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (emphasis added).

A state and its departments are not "persons" amenable to suit under section 1983. *Will*, 491 U.S. at 67-70. Also barred are section 1983 suits for damages against "governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes," which are "no different from a suit against the State itself." *Id.* at 70-71.

State officials, sued in their official capacities, are likewise considered to be part of the State, and are not "persons" subject to a damages suit under section 1983. A section 1983 claim may be brought against them, however, in their individual capacities. *Id.* at 71 n.10; *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

Cresci sues Aquino and Signorelli in their individual, not official, capacities. As individuals, even if employed directly by the State, they would be "persons" amenable to suit under section 1983. Their motion to dismiss on this basis is accordingly denied.

As to the County, the issue is a little more complicated. A local governmental unit is not a liable "person" by virtue of that status. It may nevertheless be liable for the acts of its employees—not by *respondeat superior*, but pursuant to the more demanding test of *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). *Cf. LaVerdure v. Cty. of Montgomery*, 324 F.3d 123, 126 (3d Cir. 2003) ("Municipalities and other bodies of local government such as Montgomery County are liable under § 1983 only if they have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'") (quoting *Monell*, 436 U.S. at 690); *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (plaintiff must show that "the alleged constitutional transgression implements or executes a policy, regulation, or

decision officially adopted by the governing body or informally adopted by custom.").

Cresci alleges that the County—a litigation adversary and presumed opponent of public employee unions—was hostile to him. (Compl. ¶¶ 42-48). But there is no factual, non-speculative allegation that the County was directly involved in these events, or that they resulted from any County policy or custom of skirting New Jersey's summons/warrant procedure. The words "policy" and "custom" appear in the complaint here and there, but only generally. (Compl. ¶¶ 21-22, 46) The specifics of any particular policy or custom are not specified. There are no factual, non-conclusory allegations suggesting knowledge, a pattern of incidents, or the County's explicit or tacit communication or approval of the conduct alleged. *See McTernan v. City of New York*, 564 F.3d 636, 658-59 (3d Cir. 2009).

In sum, the motion of Aquino and Signorile to dismiss the complaint on Eleventh Amendment and section 1983 "person" grounds is denied. The County's motion to dismiss on Eleventh Amendment grounds is denied because it has made no demonstration that it acts as an arm of the State. The County's motion to dismiss the section 1983 claims because there is no sufficient allegation that it is a "person" subject to suit is granted.[7]

### C.   Rule 12(b)(6) Motion: Federal Constitutional Claims

As to the federal constitutional claims against Aquino and Signorile that have survived that threshold analysis, I consider the motions to dismiss for failure to state a claim. For the reasons set forth below, none of the remaining federal claims survive Rule 12(b)(6) scrutiny.

---

[7]     I address the issue of the County's amenability to suit because it is prior to the merits. It may make little practical difference, however. If the County is to be liable, it must be by virtue of the actions of its employees, Aquino and Signorile. But for the reasons expressed in the following sections, those actions, even if violative of State procedure, give rise to no viable federal Constitutional claim.

### 1. Qualified immunity

Qualified immunity protects government officials from insubstantial claims in order to "shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). To overcome qualified immunity, a plaintiff must plead facts "showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 735. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Id.* at 741 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Court has discretion to analyze the steps in either order. *Pearson*, at 236 (partially overruling *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Cresci brings section 1983 claims under the First, Fourth, and Fourteenth Amendments. Each fails the qualified immunity test, not merely because the underlying Constitutional right is not clearly established, but because there is no viable federal Constitutional claim at all.

### i. Fourth Amendment

The crux of this lawsuit is that Cresci was unconstitutionally arrested and imprisoned pursuant to a procedurally improper warrant. It therefore makes sense to start with the Fourth Amendment claims. The New Jersey Court Rules distinguish between arrest warrants and summonses. *See* N.J. Ct. R. 3:3-1. For all but serious crimes a summons is presumptively appropriate. *Id.* R. 3:3-1(c) & (d); *see also Fields v. City of Salem Police Dep't*, Civil No. 14-

1849, 2015 U.S. Dist LEXIS 13129, at *8-9 (Feb. 2, 2015) (discussing distinction between arrest summons and warrant).[8] Although Cresci was alleged to have committed two relatively non-serious crimes, Signorile obtained a complaint-warrant instead of a complaint-summons from a judge. The failure to observe the proper summons/warrant procedure, says Cresci, meant that he was arrested when he should have been served with a summons to appear.

Cresci's analysis of New Jersey law is correct as far as it goes. Under New Jersey procedure, a summons-complaint is usually appropriate for the sorts of crimes Cresci allegedly committed. But "even if a police officer erred in issuing a complaint-warrant, that 'does not constitute a *per se* violation of plaintiff's constitutional rights.'" *Conner v. Powell*, 162 N.J. 397, 410-11 (2000) (citing *Sanducci v. City of Hoboken*, 315 N.J. Super. 475, 485 (App. Div. 1998) (quoting *O'Brien v. Borough of Woodbury Heights*, 679 F. Supp. 429, 437 (D.N.J. 1988))); *accord Fields*, 2015 U.S. Dist. LEXIS 13129 at *8-9; *Paskowski v. Roxbury Twp. Police Dep't*, Civ. No. 13-7088 (FSH), 2014 U.S. Dist. LEXIS 11675, at *14-15 (D.N.J. Jan. 30, 2014); *Lesende v. Borrero*, Civ. No. 06-4967, 2011 U.S. Dist. LEXIS 59533, at*11-12 (D.N.J. June 3, 2011).

Noncompliance with State procedures is a relevant fact. To make out a constitutional claim, however, Cresci must show that the arrest was not supported by probable cause. *E.g., Groman v. Twp. of Manalapan*, 47 F.3d 628, 634-37 (3d Cir. 1995) (ruling that plaintiff must demonstrate lack of probable cause to prevail on section 1983 false arrest and imprisonment claims); *see also Connor*, 162 N.J. at 411 (noting that procedural compliance with the New Jersey Court Rules is "a factor that must be considered in determining whether the police officers had probable cause or whether they reasonably believed that probable cause existed.") He has not done so here.

---

[8]     There are of course exceptions to this general rule. *See* N.J. Ct. R. 3:3-1(d) But there is no evidence that any were invoked at the time Signorile obtained the complaint-warrant from the municipal judge.

Cresci concedes that Signorile attested, and a municipal judge found, probable cause that he had committed third degree theft and forgery prior to his arrest. (Comp. ¶ 25) A warrant from a "neutral magistrate is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). Based on the facts and circumstances known to Signorile (who swore that there was probable cause based on an examination of specific evidence) and Aquino (who assisted in the arrest pursuant to a warrant issued by a judge), surely a reasonably competent officer would have concluded that there was probable cause for the arrest. *Id.*[9]

Those reasonable beliefs are corroborated by subsequent events. Cresci was not released on his own recognizance but instead ordered by the judge to post bail. (Compl. ¶¶ 14-15) He was later indicted by a grand jury on the same theft and forgery charges for which he was arrested. That grand jury indictment, even standing alone, nearly conclusively establishes probable cause. *See Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001).[10]

---

[9]   Cresci alleges in conclusory fashion that Signorile and Aquinio "did not have knowledge or reasonably trustworthy facts and circumstances that would have led to the issuance of an Arrest Warrant for alleged third degree offenses" and that it was not objectively reasonable for the defendants "to believe they could arrest Plaintiff under a Third Degree complaint." (Compl. ¶¶ 19-20) Whether an arrest was "reasonable" under State procedures, however, is different from reasonableness under the Fourth Amendment. Where, as here, the arrest is supported by a judicial finding of probable cause, the legally conclusory language of this complaint does not suffice to allege a violation of a constitutional right.

[10]   Technically, a valid indictment could be returned based on evidence obtained after an invalid arrest. No such allegation is made here, however. There is also no allegation that the grand jury indictment was corrupted by fraud, perjury, or some other irregularity. *See Dorn v. Atl. City Police Dep't*, Civ. No. 14-3441 (NLH), 2015 U.S. Dist. 63044, at *9 (D.N.J. May 13, 2015) ("At the pleadings stage . . . 'this prima facie evidence [of probable cause] may be rebutted by [allegations] that the presentment was procured by fraud, perjury, or other corrupt means.") (quoting *Rose v. Bartle*, 871 F.2d 331, 353-54 (3d Cir. 1989) (alterations in original)).

In short, Cresci's claims of unlawful arrest and false arrest cannot be sustained as to Aquino and Signorile. Those claims are therefore dismissed on qualified immunity grounds.

Cresci also claims that he was subjected to excessive force. Even a valid arrest may be carried out in an unlawful manner. Therefore, unlike a false arrest claim, an excessive force claim is not necessarily defeated by a showing of probable cause. *See Groman*, 47 F.3d at 633-35. Excessive force claims in the context of arrests are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Id.* at 633-34; *Graham v. Connor*, 490 U.S. 386, 395-96 (1989). Reasonableness is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

The complaint is virtually silent as to amount of force used in connection with Cresci's arrest. As to Aquino, there no factual allegations at all. As to Signorile, the complaint alleges nothing beyond the routine use of force. (Compl. ¶ 26 ("Defendant Signorile cuffed Plaintiff from behind, while detaining Plaintiff and arresting him.")) Cresci does not allege, for example, that complaints about the tightness of the handcuffs went unacknowledged, or that he was unreasonably pushed or shoved. *See Burchett v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir. 2002). Cresci, to be sure, avers generally that he was somehow injured and that his injury is documented in County medical records. But nowhere does he actually identify what that injury was or connect it to any act by Signorile.[11]

---

[11] It is not clear why Cresci would not have access to his own medical records. Either way, though, he should be able to describe and allege his own injury, if it occurred.

The complaint, in sum, does not allege that Signorile or Aquino subjected Cresci to an unreasonable amount of force in the course of arresting him. The excessive force claim under section 1983 is therefore dismissed.

### ii.    Fifth/Fourteenth Amendment

Cresci next contends that he was deprived of his Fifth and Fourteenth Amendment rights. (Because Aquino and Signorile are state, not federal, officials, I interpret these claims as arising under the Fourteenth Amendment.) The complaint contains no allegations specific to Fourteenth Amendment rights. This claim, in other words, is no more than a recasting of the Fourth Amendment claims I have already rejected. Such arrest-related claims, however, are to be analyzed under the Fourth Amendment, not under more generalized due process standards. *See, e.g., Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, nor the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (internal quotation marks and citation omitted); *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (excessive force claim in connection with arrest must be analyzed under Fourth Amendment standards, not a generic due process standard). To the extent Cresci's Fourteenth Amendment claim is simply an alternative legal basis for his false arrest, false imprisonment, and excessive force claims, it must be dismissed.

Without alleging that he ever actually asked for these services, Cresci says that after his arrest he was denied food and water for ten hours, and did not receive medical treatment. (Compl. ¶¶ 16, 22) The complaint might thus be read as asserting a distinct conditions-of-confinement claim under the substantive due process clause of the Fourteenth Amendment. (Compl. ¶¶ 4, 33, 39); *see Schneyder v. Smith*, 653 F.3d 313, 320 (3d Cir. 2011) ("[A] detainee may not be punished prior to an adjudication of guilt in accordance with due

process of law.") (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (alteration in original)).

"Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense, however." *Bell*, 441 U.S. at 537. The Fourteenth Amendment requires that committed persons not be subjected to conditions that amount to punishment, *id.* at 536, or exceed the proper bounds of professional discretion, *see Youngberg v. Romero*, 457 U.S. 307, 321-22 (1982); *see also Southerland v. Cnty. of Hudson*, 523 F. App'x 919, 921 (3d Cir. 2013).

To constitute punishment, a deprivation must be both serious and intentional:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind." *Id.* at 298, 111 S. Ct. 2321. The Supreme Court did not abandon this bipartite analysis in *Bell*, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell*, 441 U.S. at 538-39 & n. 20). As to the "objective component," the court must consider "whether these conditions 'cause inmates to endure such genuine privations and hardship over an extended period of time,' that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard v. Taylor (Hubbard II)*, 538 F.3d 229, 233 (3d Cir. 2008) (analyzing pretrial detention under due process standard).

There are no allegations that these conditions were meant to punish Cresci or that they did constitute punishment under the circumstances. *Id.* at 538-39. The entire duration of confinement was approximately 25 hours. The

ten hours during which food and water were "denied," even if not ideal, do not approach the inhumane or torturous.[12] Nor does it allege anything specific about the alleged injuries, or state that they were so serious that treatment was required, or could not wait for one day.

Aquino or Signorile, moreover, are not alleged to have played any role in, or even to have had knowledge of, any denial of food, water, or medical care. *Davis v. Burlington Cnty. Dep't of Corr.*, Civ. No. 16-1661 (NLH), 2016 U.S. Dist. LEXIS 100174, at *8 (D.N.J. August 1, 2016) ("[T]he Third Circuit has consistently held that a plaintiff must demonstrate a defendant's personal involvement in the alleged wrongs in order to set forth a claim under § 1983.") (quoting *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (internal quotation marks omitted)).

For these reasons, Cresci has failed to plead a violation of any substantive due process right. The Fifth/Fourteenth Amendment claims are dismissed.

### iii.  First Amendment Retaliation

The First Amendment retaliation claim adds some context to the now-dismissed Fourth and Fourteenth Amendment claims, but it fails for basically the same reason. Here, Cresci alleges the same acts, but adds an allegation of unconstitutional motive: His arrest, he says, constituted retaliation for "representing clients, and representing union(s)" adverse to the County's interests, and was an attempt "to discourage those who challenge" the County or seek to "cast [it] in a negative light." (*Id.* ¶¶ 44, 46)

The only actions specifically alleged are those of Aquino and Signorile. Nothing on the face of the complaint establishes that they were part of the County's scheme to discourage attorneys from representing clients who want to

---

[12]  The complaint does not specify whether this ten hour period encompassed the hours of sleep.

sue the County or public employees wishing to form a union.[13] Even if such a claim were asserted, however, it would fail.

"To plead retaliation for the exercise of First Amendment rights, a plaintiff must allege '(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary fitness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" *Mirabella v. Villard*, No. 15-3171, 2017 U.S. App. LEXIS 5780, at *8 (3d Cir. Apr. 4, 2017) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)). The First Amendment protects access to the courts, *e.g., Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997), as well as an individual's right to speak on matters of public or social concern, *see, e.g., Baldassare v. New Jersey,* 250 F.3d 188, 195 (3d Cir. 2001). And it prohibits retaliation by public officials for the exercise of these rights. *Mirabella*, 2017 U.S. App. LEXIS 5780, at *8. For the purposes of argument, we may assume that the complaint states a *prima facie* claim for First Amendment retaliation. Even so, Aquino and Signorile would still be entitled to qualified immunity because such a First Amendment right was not clearly established at the time of his arrest.

The Supreme Court has "never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." *Reichle v. Howards,* 132 S. Ct. 2088, 2093 (2012). *Reichle* involved the scope of a previous decision, *Hartman v. Moore*, 547 U.S. 250 (2006), which held that probable cause precludes a *retaliatory prosecution* claim. *Hartman,* 547 U.S. at 252 (holding that for a claim of prosecution in retaliation for exercise of First Amendment rights, "want of probable cause must be alleged and proven"). *Reichle* did not explicitly resolve whether probable cause always negates a retaliatory *arrest* claim; it merely held that a such a First Amendment right, if any, was not clearly established at that time of the arrest at issue in that case.

---

[13]     Cresci contends otherwise in his motion papers, however. (Pl. Br. 14-16)

*Id.* at 2095-97. For qualified immunity purposes, it did not need to go farther than that.

The contours of that right have become no clearer since *Reichle* was decided. Indeed, one month after Cresci's arrest, in July 2013, the Third Circuit noted that it had "*not* decided whether the logic of *Hartman* applies to retaliatory arrest claims, and so it appears that [the officer in that case] would be entitled to qualified immunity on the First Amendment claim. " *Primrose v. Mellot*, 541 F. App'x 177, 180 n.2 (3d Cir. 2013) (emphasis added); *see also George v. Rehiel*, 738 F.3d 562, 586 (3d Cir. 2013) ("Because we have found that the individual Federal Officers' search and questioning . . . did not violate [plaintiff's] Fourth Amendment rights, we are hard-pressed to find that it could result in a First Amendment retaliation claim.")

It follows, then, that Cresci had no clearly established First Amendment right to be free from a retaliatory arrest otherwise supported by probable cause in June 2013. To the extent such a claim is raised against Aquino and Signorile, it must therefore be dismissed.[14]

## D.    State Law Claims

For the reasons expressed above, the complaint contains no viable federal cause of action. When a court has dismissed all claims over which it had original federal-question jurisdiction, it has the discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c); *see also Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

---

[14]    Because I have now dismissed all federal claims as to all of the defendants, I do not reach defendants' argument that Cresci's section 1983 claims are barred by his guilty plea or entry into a pre-trial intervention program. *See Heck v. Humphrey*, 512 U.S. 477 (1994); *Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005).

I have already found that the County is not a "person" amenable to suit under section 1983. *See* Part III.B.1., *supra*. As to the County, then, this claim cannot be sustained. Forced to confront that issue, I would hold substantively that the First Amendment retaliation doctrine does not extend to an arrest supported by probable cause, followed by an indictment.

Where, as here, the federal claims are dismissed in the early, Rule 12(b)(6) stages of litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Cresci does not contend that considerations of judicial economy, convenience, fairness, or comity weigh to the contrary.[15]

I therefore decline to exercise supplemental jurisdiction over Cresci's state law claims.

## IV.    CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss are GRANTED. Because, despite the age of the case, this is a first dismissal, it is without prejudice to the filing of an amended complaint within 30 days.

A separate Order will issue.

Dated: April 10, 2017

**KEVIN MCNULTY**
**United States District Judge**

---

[15]    The defendants point out that that there is no allegation that Cresci filed a notice of claim prior to filing this complaint. *See* N.J. Stat. Ann. 59:8-3; *Velez v. City of Jersey City*, 180 N.J. 284, 294, 850 A.2d 1238 (2004) (New Jersey Tort Claims Act applies to negligent and intentional conduct).